UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

SADE P. BENSON                                   CIVIL ACTION

VERSUS                                           NO: 20-3086

WALTER N. WILLIAMS, ET AL.                       SECTION: "A" (5)

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

This is an action brought by Sade P. Benson against Walter N. Williams and

Plaquemines Parish Government.[1]  Benson seeks to recover for injuries related to a

vehicular collision occurring on November 15, 2019, aboard the M/V PLAQUEMINES

PRIDE, a ferry boat owned and operated by Plaquemines Parish Government.

Defendants dispute that Benson sustained any compensable injuries as a result of the

incident. Original jurisdiction in federal court is based on 28 U.S.C. § 1333, admiralty

jurisdiction.

The case was tried to the Court sitting without a jury on August 7, 2023. The

matter was taken under advisement on August 21, 2023, upon receipt of the parties'

post-trial briefs. Having considered the testimony and evidence at trial, the deposition

testimony of David G. Klegin, the arguments of counsel, and the applicable law, the

Court now enters the following Findings of Fact and Conclusions of Law in accordance

with Federal Rule of Civil Procedure 52(a). To the extent that any finding of fact may be

---

[1]  Joseph Henry, erroneously identified in the First Supplemental and Amended
Complaint as John Henry, was also a defendant in the action but the plaintiff voluntarily
dismissed him from the lawsuit prior to trial. (Rec. Doc. 62, Stipulation of Dismissal).

construed as a conclusion of law, the Court hereby adopts it as such. To the extent that any conclusion of law constitutes a finding of fact, the Court adopts it as such.

I.   **FINDINGS OF FACT**

At approximately 9:10 a.m. on November 15, 2019, Ms. Sade P. Benson and Mr. Walter N. Williams were involved in a vehicular collision aboard the ferry M/V PLAQUEMINES PRIDE.

At the time of the incident the PLAQUEMINES PRIDE was owned and operated by Plaquemines Parish Government ("PPG").

At the time of the incident Williams was employed by PPG (although not in conjunction with the operations of the ferry) and he was operating a PPG-owned Ford F-150 pickup truck.

Benson was parked on the port side of the ferry for the trip across the river. Williams had parked on the bow of the ferry.

When the ferry reached its destination on the opposite side of the river and was docked, Benson began to move her vehicle forward to disembark. Deckhand Alton Johnson, another PPG employee, directed Benson to stop her vehicle so that Williams could back out of his parking place on the bow and disembark first. Johnson did not direct Benson to move her vehicle back into her parking space but rather directed her to stay in place.

Benson complied with Johnson's directive. Williams began to back his vehicle out of the bow parking space pursuant to instructions from Johnson. Williams backed his truck into Benson's stopped vehicle and he did so pursuant to express instructions from Johnson.

Johnson and Williams together were 100 percent at fault for the collision between Williams's truck and Benson's vehicle.

Johnson was 99 percent at fault because he told Benson to stop her vehicle in place, and knowing that her vehicle was stopped in place, he then gave Williams express instructions that resulted in Williams backing into Benson.

Johnson was acting in the course and scope of his employment with PPG when he directed Williams to back into Benson's vehicle.

Williams was 1 percent at fault for the accident. Although Williams was not unreasonable in relying on Johnson's instructions when backing his vehicle, and although Williams was not at fault for failing to anticipate that his fellow employee would give him a blatantly tortious instruction, it is obvious that Williams did not look behind his vehicle while backing up. Williams did not see Benson as he was backing because he did not look before backing as he should have.

Williams was acting in the course and scope of his employment with PPG (as a workflow coordinator) when he was operating the PPG-owned truck on the ferry.

Benson was not at fault for the collision. Notwithstanding that she had taken the ferry many times before, Benson had no way to know that vehicles on the bow are allowed to disembark first. There were no signs on the ferry to advise the public regarding the order of disembarkation. There were no signs to indicate that passengers should not attempt to disembark until directed by a deckhand. In fact, any suggestion that passengers were supposed to disembark only pursuant to express instructions from the crew is belied by the fact that only two deckhands (Williams and Joseph Henry) were working on the day of the incident.

3

Moreover, if Benson's vehicle was stopped in a precarious position or one making her subject to being struck by another vehicle, that situation was created by Johnson and not by Benson. But regardless of the positioning of Benson's vehicle, the most proximate cause of the collision was Johnson's negligent instructions to Williams, and Williams's failure to look behind his vehicle before backing up. Benson's attempt to disembark the ferry before the vehicles parked on the bow was not a cause of the collision.

Johnson and Williams, who were acting in the course and scope of their employment with PPG, are 100 percent at fault for whatever injuries Benson sustained in the November 15, 2019 collision.

As the employer of Johnson and Williams, PPG is vicariously liable for their tortious conduct, which was committed in the course and scope of their employment. Therefore, PPG is liable for whatever injuries Benson sustained in the November 15, 2019 collision.

Benson sought treatment at an urgent care facility within a few hours of the collision. Benson experienced neck and back pain starting from just a few hours following the collision until the time of trial.

An MRI of Benson's lumbar spine from May 22, 2020, showed facet joint fluid appreciated at the right L3/4 facet joint as well as the bilateral L4/5 and L5/S1 facet joints.

On October 22, 2020, Benson underwent four (4) facet joint injections – *i.e.*, bilateral injections at L4/5 and L5/S1 levels. The procedure was performed by Dr. Domenick Grieshaber, a pain management specialist, using a 5 inch 22 gauge spinal

4

needle. Benson testified that the injections were painful and did not provide total relief.
Benson's pain began to return by the time of her November 5, 2020 follow-up visit.
Benson did not return to Dr. Grieshaber after that follow-up appointment.

Benson declined to undergo diagnostic lumbar medical branch blocks or other
additional injections because she deemed the procedures too risky when compared to
the potential benefits. Benson opted for therapy instead.

The medical evidence evinces 25 months of conservative care (including 68
therapy sessions), in addition to the painful facet injections.

The medical record shows several significant gaps in care attributable to
Benson's hectic schedule.

January 10, 2022 was the last medical treatment at Advanced Medical Center.
Benson was released to home active care. It was recommended that Benson see a
specialist but she did not do so. Benson has made the choice to forego any future
medical treatment.

Benson was 33 years old at the time of the collision. There was no evidence
presented to suggest that her injuries pre-existed the November 15, 2019 incident. The
Court credits Benson's testimony that prior to the incident she was in excellent health
and very athletic. Benson had no residual injuries from a prior car accident in 2012.

Given Benson's age and prior medical history, Dr. Grieshaber attributed the facet
fluid issue to the accident of November 15, 2019. Dr. Grieshaber saw no evidence that
Benson was malingering.

All of the medical treatment that Benson has claimed in this lawsuit was
necessitated by and is causally related to the November 15, 2019 incident aboard the

PLAQUEMINES PRIDE.

Benson sustained the following special damages as a result of the November 15, 2019 incident: past medical expenses of **$18,776.00**.

The Court awards Benson **$125,000.00** in compensatory damages as a result of the November 15, 2019 incident. The general damage award is supported by Benson's testimony, the testimony of her husband, and the testimony of the treating physicians. Benson has asked for general damages of $300,000.00 but the Court does not find it appropriate to award general damages past January 10, 2022, when Benson was released to home active care and decided to forego any additional treatment.

Although Benson testified that she continues to suffer from sporadic accident-related pain, the Court does not award future medical expenses or compensation for future pain and suffering. As of the time of trial Benson had not attended physical therapy since May 31, 2021, and when she had been treating she often could not find time in her hectic schedule for her therapy sessions. There was no evidence that Benson had seen a medical doctor in connection with this incident in more than two years, and she was adamant at trial that she would not undergo any additional injections.

There was no evidence that Benson is permanently disabled as a result of the accident.

## II.   CONCLUSIONS OF LAW

The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1333, which confers on the federal courts original jurisdiction over admiralty and maritime claims. Venue is proper in this district and is not contested. The plaintiff was

injured on navigable waters. Maritime law governs the plaintiff's claims against the defendants.

Under maritime law, there are four elements that the plaintiff must establish to succeed on a negligence theory: 1) that the defendant owed a duty, 2) that the defendant breached that duty, 3) that the plaintiff sustained injury, and 4) that there is a causal connection between the defendant's conduct and the plaintiff's injury. *In re Great Lakes Dredge & Dock Co.*, 624 F.3d 201, 211 (5th Cir. 2010) (quoting *Canal Barge Co. v. Torco Oil Co.*, 220 F.3d 370, 376 (5th Cir. 2000)).

Vessel owners owe their passengers a duty of reasonable care under the circumstances. *Deperrodil v. Bozovic Marine, Inc.*, 842 F.3d 352, 357 (5th Cir. 2016) (citing *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 630 (1959)). Generally speaking, shipowners are held to a high degree of care for the safety of their passengers. *Id.* (citing *Smith v. Southern Gulf Marine Co. No. 2*, 791 F.2d 416, 420 (5th Cir. 1986)). Among the relevant factors are the type of carrier, the crew's experience, the risk involved, defendant's degree of control over passengers, and defendant's ability to take precaution against the risk. *Id.* (citing *Smith*, 791 F.2d at 421).

Benson was owed by PPG and its employees a duty of ordinary or reasonable care.

The duty of care that Johnson owed to Benson included the obligation to refrain from giving Williams express instructions to back his truck into Benson's vehicle. Johnson breached that duty and Benson was injured as a result.

The duty of care that Williams owed to Benson included the obligation to keep a proper lookout before backing his truck. Williams breached that duty and Benson was

7

injured as a result.

Under the general maritime law an employer is vicariously liable for the torts of its employee committed in the course and scope of the employment. *Stoot v. D & D Catering Serv., Inc.*, 807 F.2d 1197, 1199 (5th Cir. 1987).

The injuries that are the subject of this lawsuit were caused by Johnson's and Williams's breach of the duty owed to Benson. PPG, as their employer, is liable for the injuries that Benson sustained as a result of Johnson's and Williams's negligence, which occurred in the course and scope of their employment with PPG.

Prejudgment interest is appropriate in admiralty cases. *Brister v. A.W.I., Inc.*, 946 F.2d 350, 362 (5th Cir. 1991) (quoting *Noritake Co. v. M/V HELLENIC CHAMPION*, 627 F.2d 724, 728 (5th Cir. 1980)). In actions under general maritime law prejudgment interest "is the rule rather than the exception," and must be awarded unless "unusual circumstances make an award inequitable." *Drinnon Marine, LLC v. Four Rivers Towing of Alabama, LLC*, 549 F. Supp. 3d 505, 518 (E.D. La. 2021) (quoting *Ryan Walsh Stevedoring Co. v. James Marine Servs., Inc.*, 792 F.2d 489, 492 (5th Cir. 1986)). Prejudgment interest is usually awarded from the date of loss. *Reeled Tubing, Inc. v. M/V Chad G*, 794 F.2d 1026, 1028 (5th Cir. 1986). Setting the rate of interest on a judgment is within the trial court's broad discretion. *Reeled Tubing,* 794 F.2d at 1029 (citing *United States v. Central Gulf Lines Inc.,* 747 F.2d 315, 320 (5th Cir.1984)).

Benson is entitled to prejudgment interest calculated from the date of the collision on November 15, 2019, through the date of the entry of judgment. Interest rates were extremely low when Benson sustained her injuries in 2019 and when this lawsuit was filed in 2020. The Court sets prejudgment interest at a rate of 2 percent per annum.

8

Post-judgment interest will be calculated in accordance with 28 U.S.C. § 1961(a) from the date of entry of judgment until paid. Costs are owed in accordance with the applicable federal rule.

August 31, 2023

Judge Jay C. Zainey
United States District Judge